1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ELIZABETH BRANDT,                    No.  1:17-cv-00643-DAD-EPG

12                Plaintiff,

13        v.                              <u>ORDER DENYING MOTION TO STAY AND</u>
                                          <u>DENYING MOTION TO DISMISS</u>
14   OCWEN LOAN SERVICING, LLC,
                                          (Doc. Nos. 8, 20)
15                Defendants.

16

17   JOSEPH SANZBERRO,                    No.  1:17-cv-00644-DAD-EPG

                 Plaintiff,               (Doc. Nos. 10, 22)
18
          v.
19
     OCWEN LOAN SERVICING, LLC,
20
                 Defendants.
21

22   JUANA SILVA,                         No.  1:17-cv-00645-DAD-EPG

23                Plaintiff,              (Doc. Nos. 9, 23)

24        v.

25   OCWEN LOAN SERVICING, LLC,

26                Defendants.

27

28

| | |
|---|---|
| KARI ALVERSON, | No. 1:17-cv-00649-DAD-EPG |
| Plaintiff, | (Doc. Nos. 7, 19) |
| v. | |
| OCWEN LOAN SERVICING, LLC, | |
| Defendants. | |

| | |
|---|---|
| ALICE JONES, | No. 1:17-cv-00655-DAD-EPG |
| Plaintiff, | (Doc. Nos. 9, 23) |
| v. | |
| OCWEN LOAN SERVICING, LLC, | |
| Defendants. | |

| | |
|---|---|
| LAURIE CALDERON, | No. 2:17-cv-00967-DAD-EPG |
| Plaintiff, | (Doc. Nos. 9, 19) |
| v. | |
| OCWEN LOAN SERVICING, LLC, | |
| Defendants. | |

| | |
|---|---|
| TOBI BROWNING, | No. 2:17-cv-00979-DAD-EPG |
| Plaintiff, | (Doc. Nos. 9, 17) |
| v. | |
| OCWEN LOAN SERVICING, LLC, | |
| Defendants. | |

This matter is before the court on defendant's motions to stay and motions to dismiss in the above listed related cases. (*See* Doc. No. 29.) A hearing on the motions in *Elizabeth Brandt v. Ocwen Loan Servicing, LLC*, No. 1:17-cv-00643 and *Kari Alverson v. Ocwen Loan Servicing, LLC*, No. 1:17-cv-00649, was held on September 6, 2017. A hearing on the same motions made in the remaining cases was held on November 7, 2017. Attorneys Joshua Swigart and Veronica

McKnight appeared on behalf of plaintiff.  Attorneys Chad R. Fuller and Justin Brandt appeared on behalf of defendant.  Having considered the parties briefs and oral arguments, and for the reasons set forth below, the court will deny both defendant's motions to stay and motions to dismiss in all of the related cases before the court

## BACKGROUND

Plaintiffs, Elizabeth Brandt ("Brandt"), Joseph Sanzberro ("Sanzberro"), Juana Silva ("Silva"), Kari Alverson ("Alverson"), and Laurie Calderon ("Calderon") separately filed suit in federal court on May 8, 2017 against defendant, Ocwen Loan Servicing, LLC ("Ocwen"), a debt collection agency.[1]  Plaintiff Tobi Browning ("Browning") also filed suit against defendant on May 9, 2017.  Likewise, plaintiff Alice Jones ("Jones") filed suit against defendant on May 10, 2017.[2]  Plaintiffs owe defendant a mortgage-related debt as defined under California Civil Code § 1788.2(d) and (f).  However, plaintiffs bring suit under the Telephone Consumer Protection Act ("TCPA") and the Rosenthal Fair Debt Collections Act ("the Rosenthal Act")[3] alleging that defendant called plaintiffs to collect a debt in an abusive manner.  (*See generally* First Amended Complaint ("FAC") (Doc. No. 14).)  All plaintiffs allege that defendant called their cell phones using an automated telephone dialing system ("ATDS") as defined by 42 U.S.C. § 227(a)(1), /////

---

[1]  Plaintiff, Doreen Byndloss-Collins, also filed suit on May 8, 2017, but settled her claims on November 3, 2017.  (*See* Notice of Settlement (Doc. No. 40) in *Doreen Byndloss-Collins v. Ocwen Loan Servicing, LLC*, No. 2:17-cv-00972.)

[2]  There are multiple plaintiffs in these related cases.  Nonetheless and for convenience, all citations throughout this order are to the docket in the lead case, *Elizabeth Brandt v. Ocwen Loan Servicing, LLC*, No. 1:17-cv-00643, since the parties are represented by the same counsel and made identical arguments in identical motions and oppositions concerning nearly identical complaints.  To the extent there are slight variations in the facts alleged in each case, such as the number of times defendant called plaintiffs, the court will address those differences where relevant below.

[3]  Plaintiff Tobi Browning does not bring a claim under the Rosenthal Act, presumably because his claims are barred by the one-year statute of limitations in that his original complaint was filed on May 9, 2017 and the purported violations ended on August 17, 2015.  (*See generally* First Amended Complaint (Doc. No. 14) of *Tobi Browning v. Ocwen Loan Servicing, LLC*, No. 2:17-cv-00979.)

which is prohibited by 42 U.S.C. § 227(b)(1)(A).  The specific allegations of the complaints with respect to each plaintiff are as follows:[4]

- **Brandt:** From April 3, 2011 to July 2016, defendant called plaintiff on her cell phone 2,431 times.  Defendant called plaintiff every day between October 1, 2015 and October 28, 2015 for a total of 34 calls. (FAC (Doc. No. 14) ¶¶ 30–31.)

- **Silva:** From April 3, 2013 to October 2016, defendant called plaintiff on her cell phone 1,142 times.  Plaintiff received at least 20 calls within a span of three days from March 1, 2015 to March 3, 2015.  (FAC (Doc. No. 15) ¶¶ 22–29.)

- **Alverson:** From February 19, 2014 to November 21, 2016, defendant called plaintiff on her cell phone 1,139 times.  She received at least one phone call every day from October 1, 2015 to October 29, 2015 for a total of 47 calls.  (FAC (Doc. No. 15) ¶¶ 29–35.)

- **Jones:** From August 10, 2011 to July 21, 2016, defendant called plaintiff on her cell phone 1,448 times.  At one point, defendant called plaintiff every day for 10 days straight for total of 17 times.  (FAC (Doc. No. 15) ¶¶ 18–29.)

- **Calderon:** From May 2, 2011 to November 18, 2016, defendant called plaintiff on her cell phone at least 1,433 times.  She received one phone call every day for 54 days straight between May and July 2012.  Plaintiff also received at least one call for 100 days straight between March and July 2014.  (FAC (Doc. No. 16) ¶¶ 28–31.)

- **Browning:** From January 6, 2010 to August 17, 2015, defendant called plaintiff approximately 1,113 times.  Plaintiff was called 15 times by defendant between July 26, 2015 and July 30, 2015.  (FAC (Doc. No. 14) ¶¶ 23–29.)

All plaintiffs allege that they did not provide prior express consent for these calls to made, and any such consent that may have existed was orally revoked.  (FAC (Doc. No. 14) ¶¶ 34–36.) Plaintiffs also allege that the calls began to disrupt their daily lives.  (*Id.* at ¶¶ 41–43.)  They

/////

---

[4]  These references are to the first amended complaint filed by each plaintiff.  As stated, all other references are to the first amended complaint filed in *Elizabeth Brand v. Ocwen Loan Servicing, LLC*, No. 1:17-cv-00643, Docket No. 14.

began to ignore phone calls from unknown numbers and missed important communications from close friends and family members as a result. (*Id.*)

After plaintiffs filed suit in federal court, defendant filed motions to stay in all of the cases. (Doc. No. 8.) In addition to filing oppositions to the motions to stay (Doc. No. 13), plaintiffs filed first amended complaints in each case. (Doc. No. 14.) Defendant subsequently filed motions to dismiss the first amended complaints. (Doc. No. 20.) Identical oppositions and replies were filed in all of the cases. (Doc. Nos. 24, 25.) Below, the court will consider the issues raised by defendant's motions to stay and motions to dismiss.

## MOTIONS TO STAY

### A. Legal Standard

"The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *accord Stone v. I.N.S.*, 514 386, 411 (1995) ("[W]e have long recognized that courts have inherent power to stay proceedings and 'to control the disposition of causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" (Breyer, J., dissenting) (quoting *Landis*, 299 U.S. at 254)). Deciding whether to grant a stay pending the outcome of other proceedings "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis*, 299 U.S. at 254–55. The party seeking such a stay must "make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damages to some one [sic] else." *Id.* at 255. In considering whether to grant a stay, a court must weigh several factors, including "[1] the possible damages which may result from the granting of a stay, [2] the hardship or inequity which a party may suffer in being required to go forward, and [3] the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (citing *Landis*, 299 U.S. at 254–55). A stay may be granted regardless of whether the separate proceedings are "judicial, administrative, or arbitral in character, and does not require that the issues in such

1  proceedings are necessarily controlling of the action before the court." *Leyva v. Certified*

2  *Grocers of Cal., Ltd.*, 593 F.2d 857, 864 (9th Cir. 1979).

3      **B.  The Telephone Consumer Protection Act and the ACA International Litigation**

4          The TCPA makes it unlawful for any person "to make any call . . . using any automatic

5  telephone dialing system" to certain types of telephones without the called party's prior express

6  consent.  47 U.S.C. § 227(b)(1)(A)(iii).  The term "automatic telephone dialing system" is defined

7  as "equipment which has the capacity—(A) to store or produce telephone numbers to be called,

8  using a random or sequential number generator; and (B) to dial such numbers."  47 U.S.C.

9  § 227(a)(1).  In 2015, the Federal Communications Commission (FCC) adopted rules and

10 regulations concerning the defining features of an ATDS.  *See* In re Rules & Regulations

11 Implementing the Tel. Consumer Prot. Act of 1991, 30 FCC Rcd. 7961 (2015) (effective July 10,

12 2015).  Therein, the FCC took the position that the term "capacity" in the TCPA refers to not only

13 a system's "present ability" to dial random or sequential numbers, but also a system's potential

14 ability to do so.  *Id.* at 7974.  Thus, equipment that presently lacks software necessary to enable

15 sequential or random dialing—but might later be programmed to do so—could constitute an

16 ATDS.  *Id.*

17         This distinction between present and potential ability is at issue in *ACA International v.*

18 *Federal Communications Commission* ("*ACA International*"), a case currently pending before the

19 D.C. Circuit Court of Appeals.  Appellants in that case contend that the FCC's definition of an

20 ATDS is unlawful.  Specifically, they argue the FCC's definition of the term "capacity" is

21 erroneously broad and must be limited to a system's present abilities only.  Also at issue before

22 the D.C. Circuit, and relevant to these cases before this court, is whether the FCC imposed an

23 unworkable regime in finding that consumers may revoke consent "in any reasonable manner,"

24 such as orally or in writing.  All briefing in *ACA International* has been submitted, and the court

25 heard oral argument in October 2016.  *See* Oral Argument, *ACA International v. Federal*

26 *Commc'ns Comm'n*, No. 15-1211 (D.C. Cir. Oct. 19, 2016), Doc. No. 1641668.  To date,

27 however, no decision has been rendered by the D.C. Circuit in that case.

28 /////

## C. Discussion

Below, the court will consider each of the relevant factors in determining whether the granting of a stay while awaiting a decision in *ACA International* is appropriate in these cases.

### 1. Hardship or Inequity in Moving Forward

Defendant argues that granting stay will prevent the parties before this court from engaging in unnecessary discovery and motion practice in the event the decision in *ACA International* narrows or extinguishes plaintiffs' claims. (Doc. No. 8-1 at 9.) According to defendant, "with the benefit of the *ACA* ruling, the parties can engage in more focused litigation based on the insight provided by the D.C. Circuit, thus reducing the burden of litigation on the parties and on the Court." (*Id.* at 10.) The court is not persuaded by this argument.

Regardless of how the pending appeal in *ACA International* is decided, the parties here will be required to engage in discovery to determine the type of technology used to make the calls. Discovery will also be necessary with respect to plaintiffs' other causes of action, which include state law claims such as negligence and violations of the Rosenthal Act. *See, e.g.*, *Franklin, v. Ocwen Loan Servicing, LLC, Defendant*, No. 17-CV-00939-AJB-BLM, 2017 WL 4922380, at *4 (N.D. Cal. Oct. 31, 2017) ("Ocwen will still be required to produce discovery to settle the factual disputes regarding its autodialing technology and Franklin's alleged revocation of consent no matter the outcome of *ACA International*."); *see also Montegna v. Ocwen Loan Servicing, LLC*, Case No. 17-CV-00939-AJB-BLM, 2017 WL 4680168, at *5 (S.D. Cal. Oct. 18, 2017) (noting that discovery would be required , in any event, because "the *ACA International* decision will not address claims brought under the Rosenthal Act, a cause of action Plaintiff also brings here, and a claim which the Court finds survives defendant's motion to dismiss."); *Anderson v. Credit One Bank, Nat'l Ass'n*, No. 16CV3125-MMA (AGS), 2017 WL 4654646, at *3 (S.D. Cal. Oct. 17, 2017) (same); *Crooks v. Rady Children's Hosp.*, No. 17CV246-WQH-MDD, 2017 WL 4541742, at *3 (S.D. Cal. Oct. 10, 2017) (same); *Lathrop v. Uber Techs., Inc.*, No. 14-CV-05678-JST, 2016 WL 97511, at *3–4 (N.D. Cal. Jan. 8, 2016) (same).

/////

/////

2.  Judicial Efficiency

Defendant also argues that granting stay will promote judicial efficiency because the scope of the issues to be resolved by this court will be narrowed by the D.C. Circuit Court of Appeals' consideration of potential capacity for an ATDS.  Again, the undersigned is not persuaded by this contention.

Here, plaintiffs have not alleged that defendant's system has the potential ability to store or produce telephone numbers to be called randomly, such that the capacity can be added if not already present.  Rather, in each of their first amended complaints plaintiffs appear to be proceeding on a "present ability" theory that defendant called plaintiffs using an ATDS that "has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator."  (FAC ¶ 27.)  Thus, given plaintiffs' "present ability" theory of liability as alleged in their operative complaints, the decision in *ACA International* regarding whether the FCC's definition of the term "capacity" is erroneously broad will apparently have no bearing on the outcome of these actions.  *Larson v. Harman Management Corp.*, No. 1:16-cv-00219, 2017 WL 3172979, at *3 (E.D. Cal. July 26, 2017) (noting that "even if the D.C. Circuit Court of Appeals issues an opinion in defendant's favor, plaintiffs' claims under the TCPA are likely to survive on plaintiffs' 'present ability' theory.").

Similarly, defendant argues that the decision in *ACA International* will determine whether plaintiffs' oral revocation of consent is sufficient as a matter of law and that this militates in favor of a stay of these actions.  (Doc. No. 8-1 at 6.)  According to defendant, should the D.C. Circuit find that the FCC's expansive definition of revocation is unworkable and hold that revocation of consent must be in writing, plaintiffs' "oral revocation of consent may be found insufficient on its face and could potentially bar" their TCPA claims. (*Id.*)  The undersigned is, once again, not convinced.  As one court recently explained, "[if] the D.C. Circuit upholds the 2015 FCC Order, the parties will need to conduct discovery to determine whether Plaintiffs' revocation of consent was effective.  If the 2015 FCC Order's ruling on consent revocation does not survive, the parties will still need to conduct similar discovery, only under Ninth Circuit precedent."  *DeClue v.*

/////

1    *United Consumer Fin. Servs. Co.*, No. 16cv2833 JM (JMA), 2017 WL 4541668, at *2 (S.D. Cal.
2    Oct. 11, 2017); *see also Anderson*, 2017 WL 4654646, at *3.

3        In this regard, the Ninth Circuit has already held that although the TCPA "does not
4    explicitly grant consumers the right to revoke their prior express consent," consumers are still
5    permitted to do so.  *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1047 (9th Cir.
6    2017).  The court found support for the notion of revoking consent, without indicating any
7    specific matter in which consent should be revoked, by looking to the decisions of sister circuits,
8    common law principles, congressional intent, and guidance from the FCC.  *Id.* (noting that "such
9    a holding is consistent with the common law principle that consent is revocable.  Courts have
10   found that Congress did not depart from the common law understanding of consent, and at
11   common law, consent may be withdrawn.") (internal citations omitted).  Notably, the court in *Van*
12   *Patten* reasoned that "allowing consumers to revoke their prior consent aligns with the purpose of
13   the TCPA," which is "to protect consumers from unwanted automated telephone calls and
14   messages . . . ."  *Id.*  Thus, even if the D.C. Circuit were to hold that written revocation of consent
15   is required, the parties here will likely still be required to litigate the issue of revocation under
16   Ninth Circuit precedent.  *See O'Hanlon v. 24 Hour Fitness USA, Inc.*, No. 15-CV-01821-BLF,
17   2016 WL 815357, at *5 (N.D. Cal. Mar. 2, 2016) (noting that the D.C. Circuit's decision is "not
18   binding on this Court[,]" because other circuit courts have also interpreted terms under the TCPA
19   including the Ninth Circuit).

20       Accordingly, the undersigned concludes that granting a stay pending a decision of the
21   D.C. Circuit in *ACA International* will not promote simplification of the issues before this court.

22       3.  Prejudice to the Opposing Party

23       Defendant next argues plaintiffs will not be prejudiced by the granting of a stay because
24   the parties before this court are in the early stages of litigation and it is not likely that the stay will
25   be lengthy.  (*Id.* at 7–8.)  Plaintiffs counter by arguing that granting a stay would prejudice them
26   because they will lose access to evidence such as call logs and dialer information that may be
27   under the control of third parties with unknown retention policies.  (Doc. No. 13 at 9.)
28   /////

*ACA International* was argued before the D.C. Circuit over a year ago and a decision has not yet been forthcoming. In addition, regardless of the outcome, it would seem that an appeal to the U.S. Supreme Court is likely. *See Anderson*, 2017 WL 4654646, at *3. "[E]ven the most optimistic estimate of the time required for a decision from the D.C. Circuit significantly understates both the delay a stay might engender and the concomitant prejudice to plaintiff." *Lathrop*, 2016 WL 97511, at *4. Given the significant passage of time and uncertainty regarding when a final decision will be rendered in the *ACA International* case, this court concludes that plaintiffs will likely be prejudiced by the granting of an indefinite stay.

For all of the reasons set forth above, the court concludes that granting a stay in these cases while awaiting the decision of the D.C. Circuit in *ACA International* would be inappropriate. Defendant will not suffer hardship or inequity in moving forward with these actions because discovery will be necessary with respect to plaintiffs' other claims regardless of the decision in *ACA International*. Judicial efficiency will not be served because the decision in *ACA International* will likely have little bearing on the resolution of plaintiffs' claims. Finally, plaintiffs would be prejudiced by a stay given the significant passage of time and uncertainty as to when a final decision in *ACA International* will be rendered. Accordingly, defendant's motion to stay these actions will be denied.

## MOTIONS TO DISMISS

### A. Legal Standard

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989). However, the court need not assume the truth of legal conclusions cast in the form of factual allegations. *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. *See also Iqbal*, 556 U.S. at 676 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Defendant moves to dismiss these actions on the grounds that: (1) plaintiffs' state law claims are barred by the applicable statute of limitations; (2) plaintiffs have failed to adequately allege negligence claims under the TCPA and the Rosenthal Act; (3) plaintiffs have not alleged facts sufficient to support a finding of malice, oppression or fraud for punitive damages; and (4) plaintiffs do not have standing to bring a TCPA claim because they cannot show injury-in-fact. (Doc. Nos. 20-1 at 6.)

**B. Discussion**

1. State Law Claims Barred by the Statute of Limitations

The statute of limitations for negligence claims in California is two years. Cal. Civ. Code § 335.1. The statute of limitations for claims brought under the Rosenthal Act is one year. Cal. Civ. Code § 1788.17. Here, plaintiffs' injuries collectively span from January 6, 2010 at the earliest, to November 21, 2016 at the latest. Plaintiff Browning filed suit on May 9, 2017 and plaintiff Jones filed suit on May 10, 2017. The remaining plaintiffs filed suit on May 8, 2017. Any injuries spanning from the respective dates in May 2015 to May 2017 are within the statute

of limitations period for negligence. Likewise, any injuries spanning from the respective dates in May 2016 to May 2017 are within the Rosenthal Act statute of limitations period, save for plaintiff Browning who has not brought such a claim. At issue, therefore, is whether plaintiffs' claims relating to injuries suffered prior to the respective dates in May 2015 for negligence and May 2016 under the Rosenthal Act are barred by the applicable statute of limitations. Plaintiffs argue they should receive the benefit of tolling with respect to their claims. (Doc. No. 24 at 10.) Below, the court will address three tolling doctrines: (a) *American Pipe* tolling; (b) equitable tolling; and (c) tolling under the continuing violations doctrine and their application to these cases.

a. *Tolling Under "American Pipe"*

Plaintiffs argue the statute of limitations for each of their causes of action is tolled because of a class action that was filed in the Northern District of Illinois on October 27, 2014, *Snyder v. Ocwen Loan Servicing, LLC*, Case No. 1:14-cv-8461. (*Id.* at 12.) The class in that case is defined as individuals who received calls from defendant using an ATDS even after consent had been revoked. (*Id.*) Here, plaintiffs assert that as putative class members, their claims should be tolled until the class is certified in the *Snyder* case. (*Id.*) Defendant, however, argues that the filing of a class action complaint in federal court only tolls the statute of limitations with respect to federal claims and not state law claims, and that cross-jurisdictional tolling is not permitted under California law. (Doc. No. 20-1 at 9.)

In *Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 554 (1974) ("*American Pipe*"), the U.S. Supreme Court held that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." The Ninth Circuit has held that the decision in *American Pipe* "does not mandate cross-jurisdictional tolling as a matter of state procedure[,]" and that California was unlikely to import the doctrine because of its "interest in managing its own judicial system . . . ." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1025 (9th Cir. 2008); *see also Hendrix v. Novartiz Pharm. Corp.*, 975 F. Supp. 2d 1100, 1111 (C.D. Cal. 2013), *aff'd,* 647 F. App'x 749 (9th Cir. 2016); *Centaur Classic Convertible Arbitrage Fund Ltd. v. Countrywide Fin.*

*Corp.*, 878 F. Supp. 2d 1009, 1015 (C.D. Cal. 2011) ("*Centaur Classic*") ("The rule is not binding on state law claims, which are governed by state law statutes of limitation and state law tolling principles.").

In light of these authorities, tolling the statute of limitations for putative class members does not apply to their state law claims. Therefore, in the cases before this court tolling based upon the filing of the *Snyder* class action would only apply to the bringing of plaintiffs' TCPA claim. *See Montegna*, 2017 WL 4680168, at *8 ("Here, while *American Pipe* would admittedly toll the statute of limitations for Plaintiff 's federal TCPA claims, because California does not recognize cross-jurisdictional tolling, this Court has no authority to apply *American Pipe* to Plaintiff's state law claims of negligence and violations of the Rosenthal Act."). The statute of limitations for the filing of plaintiffs' state law claims is not subject to tolling under *American Pipe*.[5]

### b. *Equitable Tolling*

The fact that the time for bringing plaintiffs' state law claims is not subject to tolling under the decision in *American Pipe* does not bar "application of California's equitable tolling doctrine, which covers situations beyond those covered by *American Pipe*." *Hatfield v. Halifax PLC*, 564 F.3d 1177, 1188 (9th Cir. 2009) (finding that "California would at least apply equitable tolling to claims made by its own residents."); *see also Hendrix*, 975 F. Supp. 2d at 1111 (noting that in the absence of *American Pipe* tolling, "any tolling of the statute of limitations must fall within California's doctrine of equitable tolling."); *Delagarza v. Tesoro Ref. & Mktg. Co.*, C-09-5803 EMC, 2011 WL 4017967, at *5 (N.D. Cal. Sept. 8, 2011) (rejecting defendant's contention that equitable tolling could not be used to escape the limits of *American Pipe*); *Gardner v. Shell*

---

[5] Moreover, although the class in *Snyder v. Ocwen Loan Servicing, LLC* has not yet been certified, the court in that action has found that the plaintiffs have at least "established the basis for certification of a limited class under Federal Rule of Civil Procedure 23(b)(2)." *Snyder v. Ocwen Loan Servicing, LLC* , No. 14 C 8461, 2017 WL 2798387, at *16 (N.D. Ill. June 28, 2017). This is of significance here because the Ninth Circuit has noted that under *American Pipe*, "a plaintiff can rely on the filing of a prior class action to vindicate the right in question and toll the statute in the event that class is *not ultimately certified*." *Clemens*, 534 F.3d at 1025. (emphasis added).

*Oil Co.*, No. 09-05876 CW, 2010 WL 1576457, at *5–6 (N.D. Cal. Apr. 19, 2010) (applying

California's equitable tolling principles where *American Pipe* tolling was unavailable to

plaintiffs); *cf. Centaur Classic*, 878 F. Supp. 2d at 1018 (declining to apply California's equitable

tolling doctrine because in that case the class actions were filed in the same forum).  "Three

factors are taken into consideration when deciding whether to apply equitable tolling under

California law:  (1) timely notice to the defendant in the filing of the first claim; (2) lack of

prejudice to the defendant in gathering evidence to defend against the second claim; and (3) good

faith and reasonable conduct by the plaintiff in filing the second claim."  *Hatfield*, 564 F.3d at

1185.

Although equitable tolling is available under California law, the court concludes that it is

not applicable to plaintiffs' state law claims before this court for two reasons.  First, the overlap

between the *Snyder* class action and the cases before this court is limited to the TCPA claim and

does not extend to the California state law claims for negligence and violations of the Rosenthal

Act brought by plaintiffs here.  Second, like tolling under *American Pipe*, equitable tolling applies

"where one action stands to lessen the harm that is the subject of a potential second action; where

administrative remedies must be exhausted before a second action can proceed; or where a first

action, embarked upon in good faith, is found to be defective for some reason."  *McDonald v.*

*Antelope Valley Cmty. Coll. Dist.*, 45 Cal. 4th 88, 100 (2008); *see also Gabor v. Deshler*, No. 17-

CV-01524-LHK, 2017 WL 4151042, at *8 (N.D. Cal. Sept. 19, 2017); *Warne v. City & Cty. of*

*San Francisco*, No. 16-CV-06773-JSC, 2017 WL 2834050, at *7 (N.D. Cal. June 30,

2017), *reconsideration denied,* No. 16-CV-06773-JSC, 2017 WL 3575594 (N.D. Cal. July 11,

2017).  Here, the first action in question has not been found to be defective.  Rather, as noted by

the court, the judge presiding over the *Snyder* class action has found that the plaintiffs there have

"established the basis for certification of a limited class under Federal Rule of Civil Procedure

23(b)(2)."  2017 WL 2798387, at *16.  While plaintiffs here may contest the finality of class

certification in *Snyder*, final class certification appears to be forthcoming in that action with no

finding that the suit is defective for any reason.  *Cf. Delagarza*, 2011 WL 4017967 at *4–5

/////

1  (finding equitable tolling applicable where class certification in the first action was ultimately

2  denied); *Gardner*, 2010 WL 1576457 at *5–6 (same).

3      Accordingly, plaintiffs are not entitled to receive the benefit of equitable tolling under

4  California law with respect to their state law claims brought before this court.

5          c.  *Tolling under the Continuing Violations Doctrine*

6      Defenses based upon the statute of limitations can also be "overcome by the continuing

7  violations doctrine." *Komarova v. Nat'l Credit Acceptance, Inc.*, 175 Cal. App. 4th 324, 343

8  (2009). That doctrine,

9
   permits recovery "for actions that take place outside the limitations
10   period if these actions are sufficiently linked to unlawful conduct
    within the limitations period [.]" "The key is whether the conduct
11   complained of constitutes a continuing pattern and course of
    conduct as opposed to unrelated discrete acts. If there is a pattern,
    then the suit is timely if 'the action is filed within one year of the
12   most recent [violation]' [citation], and the entire course of conduct
    is at issue."
13

14  *Id.* (quoting *Richards v. CH2M Hill, Inc.*, 26 Cal. 4th 798, 812 (2001) and *Joseph v. J.J. Mac*

15  *Intyre Companies, L.L.C.*, 281 F. Supp. 2d 1156, 1161 (N.D. Cal. 2003)); *see also Harper v.*

16  *Lugbauer*, No. 11-CV-01306-JST, 2014 WL 1266305, at *9 (N.D. Cal. Mar. 21, 2014), *aff'd,* No.

17  14-15759, 2017 WL 4228112 (9th Cir. Sept. 22, 2017). The continuing violations doctrine

18  applies to claims brought under California's Rosenthal Act. *Komarova*, 175 Cal. App. 4th at 344

19  ("Unreasonably frequent calling (§ 1788.11, subd. (e)) is clearly a continuing course of conduct

20  under this test because the violation occurs only through repetition."); *Huy Thanh Vo. V. Nelson*

21  *& Kennard*, 931 F. Supp. 2d 1080, 1087 (E.D. Cal. 2013) (confirming that the continuing

22  violations doctrine applies to the Rosenthal Act).

23      Here, according to the allegations of the first amended complaints, the calls made before

24  the filing of plaintiffs' actions on the respective dates in May 2017 reflect a continuing pattern or

25  course of conduct on the part of defendant that are not isolated acts. All of the calls were related

26  to the collection of a debt and were made in a similar harassing and persistent manner. Thus, any

27  injuries that were incurred before the respective dates in May 2015 fall within the statute of

28  limitations period with respect to state law negligence claims. Likewise, any injuries that were

15

incurred by plaintiffs before the respective dates in May 2016 fall within the statute of limitations period for bringing claims under California's Rosenthal Act. *See, e.g.*, *Komarova*, 175 Cal. App. at 343, 345 (finding that the continuing violations doctrine applied to all the violations that occurred "prior to October 12, 2005—one year before the complaint was filed.").

Applying the continuing violation doctrine, the court finds that plaintiffs' state law claims as presented in their first amended complaints are not time barred by the applicable statute of limitations. Accordingly, defendant's motions to dismiss plaintiffs' claims on untimeliness grounds will be denied.

### 2. Negligence Claim

Defendant also moves to dismiss plaintiffs' negligence claims. "The elements of an action for negligence are the existence of *duty* (the obligation to other persons to conform to a standard to avoid unreasonable risk of harm to them); *breach of duty* (conduct below the standard of care); *causation* (between the defendant's act or omission and the plaintiff's injuries); and *damages*." *Merrill v. Navegar, Inc.*, 26 Cal. 4th 465, 500 (2001) (emphasis in original); *see also Sepehry-Fard v. Dep't Store Nat'l Bank*, No. 13-CV-03131-WHO, 2013 WL 6574774, at *2 (N.D. Cal. Dec. 13, 2014), *aff'd in part,* 670 Fed. App'x 573 (9th Cir. 2016). Generally, "a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Nymark v. Heart Fed. Savings & Loan Ass'n*, 231 Cal. App. 3d 1089, 1095 (1991); *Montegna*, 2017 WL 4680168 at *10; *Sepehry-Fard*, 2013 WL 6574774 at *2. Liability to a borrower may attach, however, "when the lender 'actively participates' in the financed enterprise 'beyond the domain of the usual money lender.'" *Wagner v. Benson*, 101 Cal. App. 3d 27, 35 (1980) (quoting *Connor v. Great Western Sav. & Loan Ass'n*, 69 Cal. 2d 850, 864 (1968)); *see also Nymark*, 231 Cal. App, 3d at 1095; *Montegna*, 2017 WL 4680168 at *10; *Sepehry-Fard*, 2013 WL 6574774 at *2.

The majority of district courts to consider negligence claims such as these have found them to be subject to dismissal under the principles recognized above and the general rule that "a debt collector owes no duty of care to debtors in the collection of consumer debts." *Montegna*,

16

2017 WL 4680168 at *11 (citing *Inzerillo v. Green Tree Servicing, LLC*, No. 13-cv-6010-MEJ, 2014 WL 1347175, at *1 (N.D. Cal. Apr. 3, 2014)); *see also Franklin*, 2017 WL 4922380, at *3; *see also Sepehry-Fard*, 2013 WL 6574774 at *3; *Sepehry-Fard v. MB Fin. Servs.*, No. C 13-02784 JSW, 2014 WL 122436, at *2 (N.D. Cal. Jan. 13, 2014). However, in recently denying a motion to dismiss aimed at a complaint setting forth allegations strikingly similar to those advanced by plaintiffs here one district court has stated:

> As an initial matter, the court does not rule out the existence of a duty of care as it relates to Ocwen's conduct in this case. In the context of a lender-borrower relationship, courts have held that some activities are not protected by a duty of care. *See McCarty v. GCP Mgmt., LLC*, No. CIV 10-00133 JMS/KSC, 2010 WL 4812763, at *2 (D. Haw. Nov. 17, 2010) (finding no duty of care arising from lender negligently "ma[king] loans they knew Plaintiffs would be unlikely to repay"); *Champlaie v. BAC Home Loans Servicing, LP*, 706 F.Supp.2d 1029, 1061 (E.D. Cal. 2009) (finding no duty of care when lender "place[s] borrowers in a loan, even where there was a foreseeable risk borrowers would be unable to repay"); *Nymark v. Heart Fed. Savings & Loan Ass'n*, 231 Cal.App.3d 1089, 1096, 283 Cal. Rptr. 53 (Ct. App. 1991) (finding no duty of care when lender "apprais[es] the borrower's collateral to determine if it is adequate security for a loan"); *Wagner v. Benson*, 101 Cal.App.3d 27, 161 Cal. Rptr. 516, 521 (Ct. App. 1980) (finding no duty of care by lender to "ensure that borrower will use borrowed money wisely").
>
> Yet none of these courts addressed the situation at hand here, where a lender uses the borrower's personal phone number without consent and places a voluminous number of calls regarding the debt. In effect, "Defendant went beyond its role as a lender to become an aggressive debt collector, calling Plaintiff 1,053 times." (Pl.'s Opp. at 4, Dkt. 35). Arguably, such repeated and non-consensual conduct does not fall within the typical "scope of [a lender's] conventional role as a mere lender of money," and could therefore warrant the imposition of a duty of reasonable care. Cf. *Mercury Sav. & Loan Ass'n*, 225 Cal.App.3d 1458, 1469, 275 Cal. Rptr. 871 (1990) ("[A] creditor has a qualified privilege to protect its economic interest, though that privilege may be lost if the creditor uses outrageous and unreasonable means in seeking payment."); *see also Colorado Capital v. Owens*, 227 F.R.D. 181, 189 (E.D.N.Y. 2005) (finding that credit-card issuers owe a duty of care to customers in the collection of debts).
>
> In cases concerning debt collection, some courts have declined to find a duty of care when the lender's conduct appeared to fall within the "scope of [their] conventional role as a mere lender of money." *See Inzerillo v. Green Tree Servicing LLC*, No. 13-CV-06010-MEJ, 2014 WL 1347175, at *6 (N.D. Cal. Apr. 3, 2014) (finding that "Plaintiff's allegations show only that Defendant acted as a loan servicer seeking to collect on a debt"); *Sepehry–Fard v.*

17

> *Dep't Stores Nat'l Bank*, No. 13-CV-03131-WHO, 2013 WL 6574774, at *2 (N.D. Cal. Dec. 13, 2013) (finding that complaint alleged no facts showing that Defendant "went beyond the domain of a creditor seeking to collect on a debt"). Quinones, by contrast, adequately alleges that Defendant's debt collection calls went beyond the pale, and constituted harassing and abusive behavior that exceeded the normal domain of a lender collecting on a debt.

*Quinones v. Ocwen Loan Servicing, LLC*, No. 17-03536 DPP-PLAX, 2017 WL 4641083, at *3 (C.D. Cal. Oct. 16, 2017); *see also Garcia v. Ocwen Loan Servicing, LLC*, Case No. CV 17-3514-R, 2017 U.S. Dist. LEXIS 181337, at *4 (C.D. Cal. Oct. 31, 2017) (finding that a duty existed because "[d]efendant's attempt to collect on an alleged debt by calling plaintiff's personal cell phone more than 1,600 times may well exceed the scope of Defendant's conventional role in the loan context.").

The undersigned finds the reasoning of the court in *Quinones* to be persuasive where, as in the cases pending before this court, it is alleged that the defendant's conduct was extreme and "beyond the pale." Here, defendant Ocwen's alleged conduct of calling plaintiffs between 1,000 to 2,000 times within the span of five years, including sometimes calling plaintiffs persistently every day for an entire week or month at a time, would appear to constitute the type of "harassing and abusive behavior that exceed[s] the normal domain of a lender collecting on debt." *Quinones*, 2017 WL 4641083, at *3. Therefore, the undersigned concludes that plaintiffs have adequately alleged a duty of care and that their negligence claims against defendant survive a motion to dismiss.

### 3. Punitive Damages

A plaintiff may generally recover punitive damages if the defendant has acted with "oppression, fraud, or malice." Cal. Civ. Code § 3294(a). "Malice" has been defined as "conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." Cal. Civ. Code § 3294(c)(1). In this regard, a court may exercise its discretion to increase an award up to three times the amount otherwise available under the statute should it find that the defendant "willingly or knowingly" violated the TCPA. 47 U.S.C. § 227(b)(3)(C). A "[d]efendant willfully or knowingly violates the TCPA where plaintiff notifies defendant to stop

calling and defendant disregards the request." *Sapan v. Auth. Tax. Servs., LLC*, No. 13CV2782 JAH (JLB), 2014 WL 12493282, at *2 (S.D. Cal. July 15, 2014); *see also Onley v. Progressive Cas. Ins. Co.*, 993 F. Supp. 2d 1220, 1227 (S.D. Cal. 2014); *Harris v. World Financial Network Nat. Bank*, 867 F. Supp. 2d 888, 895 (E.D. Mich. 2012).

The undersigned finds plaintiffs have alleged sufficient facts in their operative complaints with respect to punitive damages. Specifically, plaintiffs allege that that defendant called their cell phone between 1,000 to 2,000 times over the course of five years. (FAC ¶¶ 26–31.) Some plaintiffs received persistent calls every day for a week or even an entire month at a time. (*See, e.g.*, *id.* at ¶ 31 (noting that, plaintiff Brandt was called everyday between October 1, 2015 and October 28, 2015 for a total of 34 calls).) Additionally, all plaintiffs allege that no prior express consent was given for these calls, and even if prior consent existed, they had orally revoked such consent, but nonetheless continued to receive phone calls from defendant. (*Id.* at ¶¶ 32–36.) Plaintiffs need not allege more to pursue enhanced damages. *See Franklin*, 2017 WL 4922380, at *3 (finding that plaintiff's allegations with respect to punitive damages were sufficient where defendant allegedly called plaintiff over 1,403 times within the span of four years, which included twelve calls made within a three-day period); *see also Quinones*, 2017 WL 4641083, at *4 (declining to dismiss plaintiff's request for punitive damages given the early stage of the proceedings and concluding that taking plaintiff's allegations as true, that defendant had engaged in conscious disregard of plaintiff's rights "by calling him over 1,000 times over a five-year period, despite his lack of prior consent and express requests to stop the calls.").

Accordingly, defendant's motion to dismiss plaintiffs' prayer for punitive damages will be denied.

### 4. Standing

"A suit brought by a plaintiff without Article III standing is not a 'case or controversy,' and Article III federal courts lack subject matter jurisdiction over such suits." *City of Oakland v. Lynch*, 798 F.3d 1159, 1163 (9th Cir. 2004). To satisfy Article III's standing requirements, a plaintiff must show:

*////*

> (1) they have suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."

*Friends of the Earth, Inc. v. Laidlaw Envtl. Sys. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000); *see also Buno v. Norton*, 371 F.3d 543, 546 (9th Cir. 2004).

The Supreme Court has affirmed that "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo v. Robins*, ___U.S.___, 136 S. Ct. 1540, 1549 (2016). However, this does not mean an injury-in-fact is established merely because Congress has conferred a statutory right. Rather, while a plaintiff can allege intangible harms to satisfy the injury-in-fact requirement, a plaintiff cannot allege a "bare procedural violation divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.*

Here, defendant Ocwen argues that plaintiffs do not have standing under the TCPA because they have not demonstrated a concrete injury-in-fact from the phone calls alleged in their first amended complaints. (Doc. No. 20-1 at 14.) Rather, defendant contends that plaintiffs' allegations reflect the type of bare procedural violations rejected as providing a basis for Article III standing by the Supreme Court in *Spokeo* because they are not connected to any concrete harm and that the mere disruption of plaintiffs' daily lives is insufficient to confer standing under the TCPA. (*Id.* at 15–16.) Defendant's argument is unpersuasive under binding Ninth Circuit authority.

In this regard, the Ninth Circuit has expressly rejected defendant's argument in *Van Patten*, 847 F.3d at 1043. There, the court noted that by enacting the TCPA, "Congress identified unsolicited contact as a concrete harm, and gave consumers a means to redress this harm." *Id.* As such, "[a] plaintiff alleging a violation under the TCPA 'need not allege any *additional* harm beyond the one Congress has identified.'" *Id.* (quoting *Spokeo* 136 S. Ct at 1549) (emphasis in original) (noting that "[u]nsolicited telemarking phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients.").

/////

20

Here, the injuries plaintiffs allege include disruption to their daily lives and missed communications from friends and family. (FAC ¶¶ 41–43.) In light of the Ninth Circuit's holding in *Van Patten*, the court finds plaintiffs' allegations concerning defendant's making of over 1,000 incessant phone calls within a span of five years (*id.* at ¶¶ 26–31) to be sufficient to allege a concrete injury-in-fact under the TCPA. *See Quinones*, 2017 WL 4641083, at *2 ("At the pleading stage, Quinones has adequately set forth an adequate injury caused by defendant's recurring debt collection calls, to which he claims he did not consent."); *see also Crooks*, 2017 WL 4541742, at *5 (noting that the unsolicited calls made by defendant and disruption to plaintiff's daily life was "sufficient to establish a concrete, particularized injury-in-fact resulting from defendant's alleged calls."); *Brinker v. Normandin's*, No. 5:14-CV-03007-EJD, 2017 WL 1425916, at *2 (N.D. Cal. Apr. 21, 2017) (same); *Flores v. Access Ins. Co.*, Case No. 2:15-cv-02883-CAS(AGRx), 2017 WL 986516, at *5 (C.D. Cal. Mar. 13, 2017) (same). Defendant's alleged behavior reflects the very invasion of privacy Congress intended to prohibit by enacting the TCPA.

Therefore, the court will also deny defendant's motion to dismiss plaintiffs' TCPA claims on standing grounds.

## CONCLUSION

For all of the reasons stated above:

1. Defendant's motions to stay are denied in all of the above listed related cases;

2. Defendant's motions to dismiss are denied in all of the above listed related cases given the court's findings that:

   a. The statute of limitations for plaintiffs' state law claims under the Rosenthal Act and negligence are tolled under the continuing violations doctrine;

   b. Plaintiffs have adequately alleged a duty of care to maintain a negligence claim;

   c. Plaintiffs have adequately alleged facts supporting the award of punitive or enhanced damages; and

/////

d.  Plaintiffs have adequately alleged a concrete injury-in-fact under the TCPA sufficient for purposes of standing.

3.  Defendant shall file its response to the operative complaints in these related actions within twenty-one days of the date of service of this order; and

4.  These related cases are referred to the assigned magistrate judge for Initial Scheduling Conference which is currently set for February 14, 2018 at 9:30 a.m. in Courtroom 10.

IT IS SO ORDERED.

Dated:   **November 29, 2017**

_____
UNITED STATES DISTRICT JUDGE